UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SARA WELLMAN,

                              Plaintiff,

                                                                                     DECISION AND ORDER

                                                                                     07-CV-6304L

           v.

METLIFE INSURANCE COMPANY,

                              Defendant.
_____

        Plaintiff Sara Wellman ("Wellman") filed this action against Metropolitan Life Insurance Co., Inc., ("MetLife"), the Plan Administrator of the Eastman Kodak Long-Term Disability Plan (the "Plan"), in which Wellman was a participant. Wellman alleges that MetLife wrongfully terminated her receipt of long term disability ("LTD") benefits, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1).

        MetLife now moves for summary judgment (Dkt. #12), arguing that Wellman cannot satisfy her burden to show that MetLife's decision to terminate her LTD benefits was arbitrary and capricious.

**I.       Standard of Review.**

        Where, as here, the terms of an ERISA Plan give its Administrator the sole and absolute authority to interpret the Plan and determine claimants' eligibility for benefits, the Administrator's

determinations are subject to a deferential standard of review, which requires only that the Administrator's decision was not arbitrary or capricious. *See Pagan v. Nynex Pension Plan,* 52 F.3d 438, 441 (2d Cir. 1995); *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989); *Darling v. DuPont deNemours & Co.,* 952 F.Supp. 162, 163 (W.D.N.Y. 1997). Under this standard, this Court may only overturn the final decision of the Administrator to deny benefits if it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Darling*, 952 F.Supp. 162 at 165 (quoting *Pagan,* 52 F.3d 438 at 442. The reviewing court's ultimate focus is "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Jordan v. Retirement Committee of Rensselaer Polytechnic Inst.,* 46 F.3d 1264, 1271 (2d Cir. 1995).

Although plaintiff urges the Court to review MetLife's determination *de novo*, the case law relied upon by plaintiff is inapposite in light of the facts presented here. While *de novo* review is appropriately applied in cases where a plan administrator is also the insurer and therefore is occupying dual, conflicting roles, no such conflict of interest exists in this case. *See e.g.*, *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct.. 2343 (2008) (where ERISA plan administrator is also the insurer of the plan, the resulting conflict of interest merits *de novo* review of the administrator's denial of coverage); *Hobson v. Metropolitan Life Ins. Co.*, 574 F.3d 75 (2d Cir. 2009) (where plaintiff fails to establish that plan administrator was influenced by a structural conflict of interest, denial of her claim will be reviewed for abuse of discretion). Here, MetLife is the Plan Administer

only. The Plan is self-insured, and thus there is no conflict justifying application of a heightened standard of review.[1]

When a Plan Administrator makes a determination based upon evidence in the record before it, ERISA mandates only that the Plan procedures afford a reasonable opportunity for a full and fair review. *See* 29 U.S.C. § 1133(2). The existence of conflicting evidence, even a conflicting opinion from a claimant's treating physician, does not necessarily render the Plan Administrator's decision arbitrary and capricious. *See Baker v. Broadspire National Services, Inc.,* 2007 U.S. Dist. LEXIS 5780 (W.D.N.Y. 2007). Furthermore, "courts have no warrant to require [ERISA Plan] administrators automatically to accord special weight to the opinions of a claimant's treating physician; nor may courts impose a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's opinion." *Black & Decker Disability Plan v. Nord*, 548 U.S. 822, 830-831 (2003). *See also Baker*, 2007 U.S. Dist. LEXIS 5780 at *16 (same).

**II. Plaintiff's Claims.**

Wellman was a Plan participant during her employment with Eastman Kodak as an optical engineer. In September 1991, Wellman ceased working and applied for disability benefits. She received LTD benefits from March 20, 1991, though September 30, 2003, on the basis of MetLife's determination that Wellman's diagnoses of fibromyalgia, chronic fatigue syndrome and multiple chemical sensitivity rendered her disabled pursuant to the terms of the Plan. Specifically, the Plan

---

[1] The other cases cited by Wellman's counsel at the hearing are similarly inapplicable. *See McCauley v. First UNUM Life Ins. Co.*, 2009 U.S. Dist. LEXIS 73379 (S.D.N.Y. 2009) (plan provisions that place claimant in an unfair "Catch-22" are unconscionable); *Magee v. Metropolitan Life Ins. Co.*, No. 07-8816 (S.D.N.Y. filed June 22, 2009) (decision to deny benefits to claimant based on claimant's failure to provide objective proof of an unprovable condition was arbitrary and capricious).

requires that in order for a participant to be eligible for disability benefits, the participant must be "totally and continuously unable to engage in any substantial Gainful Work for which he is, or becomes, reasonably qualified by education, training or experience [for a designated time period]." (Dkt. #18-3 at Wellman 00378-00393). In the case of LTD benefits, a participant is required to "[f]urnish proof of continuance of Disability, as required by [MetLife]." (Dkt. #18-3 at Wellman 00391). LTD benefits will terminate upon the participant's recovery, or in the event the participant fails to, inter alia, furnish proof that his disability is continuing. (Dkt. #18-3 at Wellman 00386).

On August 14, 2002, after receiving LTD benefits for more than a decade, Wellman informed MetLife that she had been pursuing a Master's degree in Biology at the State University of New York in Brockport ("Brockport"), and that Brockport had offered her a part-time position as a Teaching Assistant. On August 27, 2002, Wellman and MetLife entered into a vocational "Rehabilitation Plan," whereby Wellman would remain entitled to LTD benefits for an additional year, contingent upon her continued satisfaction of the Plan's definition of disability.

On June 9, 2003, Wellman's family physician completed an Attending Physician Statement of Functional Capacity ("Functional Capacity Statement") for MetLife, noting that Wellman could perform "light" work, but with a number of restrictions so significant that she remained totally disabled from any and all occupations. MetLife noted that this report was inconsistent with Wellman's self-reported participation in graduate school course work, and called Wellman to inquire. Wellman reported that she was continuing to pursue a master's degree, and had nearly completed all of her course work. She was preparing to begin a two-year research project on the effects of Lake Ontario shore pollution on the local mink population. In fact, Wellman had

performed appreciable field research, including videotaping mink on the American side of Lake Ontario, where a mink population was not previously known to exist. She was expecting a grant of $12,000 for her research project, and also expected to pursue a part-time teaching career in the biological sciences at the college level.

Based on Wellman's description of her activities, including her academic course work, field work, and continued employment as a part-time teaching assistant at Brockport, MetLife began to review Wellman's file to determine whether she was still incapable of performing "any substantial Gainful Work." (Dkt. #18-3 at Wellman 00378-00393).

A July 14, 2003 Functional Capacity Statement completed by Wellman's treating physician identified her diagnoses as chronic fatigue syndrome, multiple chemical sensitivity and fibromyalgia. Objective findings were limited to low blood pressure and acne, and subjective symptoms consisted of fatigue. Wellman was to completely avoid assuming cramped or unusual positions, and operating vehicles and heavy equipment, and had "some limitation" in virtually every other physical category. She could lift and carry up to 30 pounds for 20% of the workday, and had no psychological problems which would interfere with her ability to work. (Dkt. #18-3 at Wellman 00391).

On July 31, 2003, based upon the July 14, 2003 Functional Capacity Statement, MetLife determined that the limitations described by Wellman's physician were largely inconsistent with her reported activities, including conducting outdoor lakeshore research projects. MetLife also noted that there was little clinical data in the file to support Wellman's symptoms, and that despite Wellman's family physician describing her conditions as severe, Wellman had never treated with a specialist for any of her allegedly disabling conditions. Taking account of the physical limitations

identified by Wellman's physician, MetLife determined that Wellman could perform at least eleven (11) sedentary occupations which existed in her geographic area, and for which she was qualified.² By letter dated October 28, 2003, MetLife notified Wellman that it was terminating her benefits, retroactive to October 1, 2003.

Wellman appealed through counsel on March 24, 2004. She submitted three additional pieces of medical evidence: a note from her family practitioner, a neruopsychological evaluation from clinical neurologist Peter Sorman, and a report from Dr. William Beckett, dated June 7, 1999. Plaintiff's family physician related her subjective complaints of bouts of fatigue and loss of mental cognition. Dr. Sorman reported that he had tested Wellman's cognitive capacities and found that she was "within the very superior range of intelligence." Although he opined that she should be placed on long-term disability, he recommended that her part-time work as a teaching assistant at Brockport should continue. (Dkt. #18-2 at Wellman00270). Dr. Beckett had examined plaintiff in 1999, and found that she was "currently disabled from work in her usual occupation as a result of the extreme affects of chronic fatigue syndrome." (Dkt. #18-2 at Wellman 00256). Wellman also submitted a letter from Brockport, which noted that although Wellman's grades began to decline during the periods in which she was employed as a Teacher's Assistant, she was able to keep up with her work requirements.

MetLife submitted Wellman's records to Dr. Robert Porter, an independent analyst, for review. Dr. Porter described Dr. Beckett's June 1999 report as "[t]he only medical information"

---

² MetLife later identified an additional fifteen (15) positions which Wellman was allegedly qualified to perform as a result of her advanced biology degree. It did not, however, rely upon these positions in determining that Wellman was no longer disabled for purposes of the Plan.

before him, and concluded that in the absence of any "more recent information or functional information," he would have to defer to Dr. Beckett's conclusion that Wellman was disabled. (Dkt. #18-2 at Wellman 00256). Specifically, he noted that "[t]he lack of recent information should not be construed as a change in [Wellman's] medical status, and suggested that additional, updated records should be provided for his review. *Id*.

Finding that Dr. Porter's reliance on Dr. Beckett's report was misplaced due to the gross dissimilarities between the condition described by Dr. Beckett in 1999, and plaintiff's self-reports of her activities in 2003, including attending school, engaging in physically demanding outdoor field work, and fulfilling the requirements of a part-time teaching position, MetLife denied Wellman's appeal. This action followed.

The Court has considered the evidence of record. Based upon that evidence, I find that Metlife's determination was reasonable, supported by substantial evidence in the record before it, and was not arbitrary and capricious.

First, plaintiff claims that Metlife overlooked record evidence concerning the Social Security Administration's ("SSA") finding that she was disabled, and its award of Social Security Insurance benefits. Plaintiff argues that the SSA finding was binding upon MetLife, or should have otherwise compelled MetLife to find that plaintiff was disabled pursuant to the terms of the Plan, and that MetLife failed to consider it or afford it due weight.

It is well-settled, however, that a conclusion of the SSA that a claimant is disabled is not binding upon a plan administrator. *See Nord*, 538 U.S. 822 at 829; *Hobson*, 574 F.3d 75 at 92. Although Wellman claims that her SSA benefits entitlement was subject to periodic review, she

provided no evidence to MetLife that would indicate that the SSA investigated her condition, gathered new medical evidence, or otherwise meaningfully re-determined that Wellman was disabled, in a manner that might implicate the terms of the Plan, after its initial finding in March 1991. The fact that the SSA's determination that Wellman was disabled, and MetLife's ultimate determination that she was not, were separated by more than ten years, diminishes the value of the SSA finding. Furthermore, although plan administrators are encouraged to "explain their reasons for determining that claimants are not disabled where the SSA arrived at the opposite conclusion," the failure to do so does not, by itself, render an administrator's denial of LTD benefits arbitrary and capricious, particularly where the administrator's decision is supported by substantial evidence. *Hobson*, 574 F.3d 75 at 92.

I find that here, MetLife's determination, while different from the SSA's conclusion, was nonetheless supported by substantial evidence in the record, most significantly, Wellman's own reports that she was successfully completing graduate school course work, engaging in physically rigorous field work, and had undertaken a part-time teaching position, which she voluntarily continued for a second time the following school year. Indeed, the fact that Wellman had engaged in gainful employment for more than a year at the time MetLife denied her appeal provides strong support for MetLife's conclusion that Wellman was "not disabled" because she was in fact able to work.

To the extent that Wellman claims that MetLife failed to consider the SSA determination altogether, that argument is contradicted by the record. It is undisputed that MetLife was aware of the determination, specifically requested and obtained information related to it when it reviewed

Wellman's LTD entitlement, and in fact reduced Wellman's LTD payments in an amount proportional to her SSA benefits, pursuant to the Plan. (Dkt. #18-3 at Wellman 00353).

Plaintiff also alleges that Metlife failed to afford sufficient weight to the conclusions of Dr. Porter, which were in turn based upon Dr. Beckett's opinion that plaintiff had been disabled more than four years prior. To the extent that MetLife rejected Dr. Porter's opinion or any of the other medical evidence in the record, it did so only to the extent that the evidence, the bulk of which predated Wellman's 2003 self-reports, conflicted with Wellman's own self-reports. Given the level of exertion, engagement in substantial gainful employment, course work and field work that Wellman herself described, MetLife's finding that she was no longer disabled as that term is defined by the Plan was supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, I conclude that Wellman was afforded a reasonable opportunity for a full and fair review of her short term disability claim, and that the plan administrator's determination was not arbitrary and capricious. Defendant's motion for summary judgment (Dkt. #12) is granted, and the Complaint is dismissed, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
December 15, 2009.